1
2
3
4
5
6
7
8
**UNITED STATES DISTRICT COURT FOR THE WESTERN**
**DISTCRICT OF WASHINGTON AT SEATTLE**
9

| | |
|---|---|
| 10  ADLEY SHEPHERD, an individual; | Case No. |
| 11                       Plaintiffs, | **PLAINTIFF'S COMPLAINT** |
| 12          v. | **JURY TRIAL DEMANDED** |
| 13  CITY OF SEATTLE, a Washington | |
| 14  Municipality; and the SEATTLE POLICE DEPARTMENT; and DOES 1 to 10 | |
| 15  inclusive; | |
| 16                       Defendants. | |
| 17 | |

18
19          COMES NOW the Plaintiff, by and through his attorneys of record, and states and

20   alleges against the above-named Defendant as follows:

21                              **PARTIES & JURISDICTION**

22          1.      Plaintiff ADLEY SHEPHERD (hereinafter "**Mr. Shepherd**" or

23   "**Plaintiff**") is an individual who resides in Pierce County, Washington but who was

24   gainfully employed by the Seattle Police Department for over a decade.

25          2.      Defendants CITY OF SEATTLE and SEATTLE POLICE DEPARTMENT

26   (hereinafter "**SPD**" or "**Defendant**") is a Washington Municipality.

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.     Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 10 ("**DOE Defendants**"), inclusive, and therefore sues said DOE Defendants by fictitious names.  Plaintiff is informed and believes and based on such information and belief avers that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

5.     Plaintiff is informed and believes and based on such information and belief avers that Defendants SPD and DOE Defendants 1 through 10, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

6.     Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

4.     This court has subject matter jurisdiction over this matter, pursuant to 42 U.S.C. §§ 1981 and 2000e et seq. This court has supplemental jurisdiction over the Washington state law claims, pursuant to 28 U.S.C. § 1367. This court has personal jurisdiction over the parties, as they are all residents of the Western District of Washington.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

5.      Venue is proper in this court, pursuant to 28 U.S.C. § 1391(a)(2), because a substantial portion of the events or omissions giving rise to this claim occurred in the Western District of Washington and all the parties are residents of the Western District of Washington.

6.      Former Police Officer Shepherd filed a claim with the City of Seattle that was quickly denied with a letter letting him know to protect his rights going forward.

7.      Former Police Officer Shepherd respectfully demands a trial by jury, pursuant to LR 38(b).

## FACTS AND BACKGROUND

8.      It is important that the all the facts leading up to this action are detailed here so as to understand the events and circumstances that led to this Complaint.

9.      The Plaintiff, Former Police Adley Shepherd (hereinafter "Shepherd" or "Plaintiff"), joined the Seattle Police Department (hereinafter "SPD") as a police officer in 2005. At that time, he had just completed a career in the military. During his time in the military, he was deployed in both Iraq and Afghanistan. During his career with the SPD, he worked primarily out of the South and Southwest Precincts and held several assignments, including in patrol, the TRU training unit, and community outreach.

10.     During the time of the incident that led to his wrongful termination, in June 2014, he was working patrol out of the South Precinct of Seattle.

11.     The incident that led to his wrongful termination occurred in the early morning hours of June 22, 2014. A lady named Ms. Evelyn Shelby (hereinafter "Shelby") called 911 and reported that a 22-year-old female "was going to come to her house and fight her son." During this call, the dispatcher could hear yelling in the background, but

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

the phone was eventually disconnected.  When dispatcher called Shelby back, Shelby informed the dispatcher that her son had unplugged the phone. At that time, dispatch sent a broadcast regarding the disturbance and officers responded.

12.     Shepherd was the first to arrive at the scene. There was a male person outside the house pacing around when he arrived who became annoyed and upset when he realized that police had arrived. He showed his annoyance by smacking his head and then running his hand over the top of his head.

13.     Shepherd proceeded to contact the male who identified himself as Mr. Robert Shelby, Ms. Evelyn Shelby's son (hereinafter "Robert"). As Shepherd approached Robert, he introduced himself and advised him that he was being audio and video recorded as required by rule. Robert was agitated while he smoked a cigarette and explained that he was trying to have a normal conversation with his "baby mama" when things escalated. To avoid further escalation, Robert left the location they had been at and went home to his mother's house. However, Ms. Miyekko Durden-Bosley (the mother of Mr. Robert Shelby's child) (hereinafter "Durden-Bosley") would not leave him alone and began calling him.

14.     During the conversation between Shepherd and Robert, Robert received several phone calls. On one of the calls, Robert told the person on the line that he was at home and that his mother had called the police. On the next call, he told the person that he was still at home and to go ahead and laugh. He was noticeably annoyed at the caller. Shepherd suspected that it was Durden-Bosley contacting him, so he asked Robert if she was still calling. Robert confirmed that it was Durden-Bosley who was calling him and said that she thought this "shit is so funny."

PLAINTIFFS' COMPLAINT - 4

15.     Upon confirming that it was Durden-Bosley still contacting Robert, Shepherd inquired as to what she was being said on the phone calls.  Robert told Shepherd that she was calling him a "bitch ass nigger and all types of shit." Shepherd viewed these as fighting words. Shepherd then asked if there were any threats and Robert responded, "I hope not. I don't know what she'd do. I don't know what the fuck she's going to do. I don't know what the fuck's going to happen." Shepherd then asked Robert whether his mother was safe to which Robert responded, "Hopefully . . . Actually, I'm pretty sure she is. Nobody's gonna ..."  Shepherd then asked whether there was a restraining or protection order in place or any history of domestic violence. Id. Mr. Robert Shelby stated, "Not, I'm sure, on the record nothing."

16.     Next, Officer Shepherd left Robert with other officers who had arrived on scene to speak with his mother in the house. Shelby reported that she heard the two of them yelling and screaming on the phone, and Durden-Bosley "sayin' that she's gonna come down here (to the Shelby residence), and she's gonna beat his ass, and this and that." Shepherd asked whether the two have a history of domestic violence, and she confirmed, "[Y]es. They've been at it before, arguing and fighting like this."

17.     At this point, Durden-Bosley was not present at the residence, so Shepherd confirmed that all Shelby heard was a verbal argument over the phone. Shelby confirmed this to be true and said that she asked Robert what was going on and he told her, "She's going to come down here, and she's going to fight me because she did me dirty. Fine. I'm waiting."

18.     Piecing this all together, Shepherd told Shelby that he would update the call. He explained that if both Durden-Bosley Robert were at the residence he could write

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

1    up a police report, but Durden-Bosley was not present. Shelby indicated that she

2    understood and said again that her concern was Durden-Bosley threatening to come over

3    to the house.

4          19.    As Shepherd exited the house, he learned that Durden-Bosley had arrived

5    at the Shelby residence. He could see Robert walking on the sidewalk headed away from

6    the house, being followed closely by a woman. It looked as though the woman was trying

7    to get Robert's attention; however, he was changing directions trying to get away from

8    her.

9          20.    Confirming the woman was Durden-Bosley, her presence concerned

10   Shepherd as the initial call had been for a domestic disturbance of threats of domestic

11   violence. Now, the individual who had made the alleged threat had taken the substantial

12   step of showing up at the residence. Shepherd believed he may now be dealing with a

13   crime.

14         21.    Shepherd called out to Durden-Bosley, asking her to come speak with him.

15   He introduced himself to her and asked her what was going on. Durden- Bosley stated,

16   "Nothing. We have no beef. This is no beef prior, so   ." At this point, Shepherd could

17   smell alcohol and suspected she was intoxicated, so he asked her whether she drove to the

18   location. Durden-Bosley responded that she had walked to the location and then asked a

19   number of questions about whether she was legally allowed to walk.

20         22.    Trying to focus Durden-Bosley, he asked her again why she was at the

21   residence. To separate Durden-Bosley and Robert and gain better control of the scene, he

22   requested that Durden-Bosley speak with him near his patrol Explorer. Durden-Bosley

23   tried to keep walking past the vehicle and would not stop when asked, so he reached for

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

her arm and guided her back so he could further investigate. He then explained that it had been reported that she threatened Robert, including a threat to come to his house. Durden-Bosley stated that she did not threaten him, asked what evidence Shepherd had that she threatened to come to the house, and became upset.

23. Shepherd attempted to de-escalate and calm her down. He asked her to take a minute and "take some hee-hee-hoos" to breathe and calm down. He told her to relax and go to her happy place.

24. Next, he inquired about the reported threat and told her that she had scared Shelby. This agitated Durden-Bosley. She began yelling towards the house to Shelby. This caused Robert to begin shouting at Durden-Bosley, "Don't fucking [yell] at my mom like that, bro. You already called her a fucking bitch, dawg Just fucking, just handle shit cordially for once, man." The scene and situation had become more out of control and were starting to spiral.

25. Shepherd continued questioning Durden-Bosley until Robert began shouting at his mother. Shepherd told Durden-Bosley to stay where she was and walked over to Robert. He told Robert not to yell at his mother, meanwhile Durden-Bosley was making comments about Shepherd's and Robert's contact.

26. Finally, Shepherd told Robert and Durden-Bosley, "My patience is done. It's done. It's . . . over. So somebody's going to go to jail. Who's it going to be?" "We can do eeny-meeny-mi ". This was an attempt to de- escalate and change their behavior. He was putting them on notice that he was serious and the situation was serious. He needed them to calm down, listen to his instructions, and start answering his questions so that he

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

could continue his investigation into whether threats had been made and whether there had

been an assault during the initial fight that evening.

27.     It was Shepherd's opinion that he could not leave the scene without making

sure there was some resolution. Both subjects were angry, had been yelling, and were mad

at Shelby; and there was a reported threat of violence.

28.     Durden-Bosley started arguing again, this time that "nobody touched

anybody" so he could not take them to jail. Shepherd explained that, at this point, it did

not matter. She had threatened to come over to the Shelby residence to commit violence

and then came to the house.

29.     He decided to place her under arrest. He moved towards Durden- Bosley

and took control of her right hand for handcuffing. She became rigid and resisted by

pulling away and leaning back against the hood of the patrol Explorer. At the same time,

she kept telling him not to touch her and repeatedly asked him why she was under arrest.

Another officer on-scene, Officer Griffin, who was helping Shepherd conduct the arrest,

explained once again that it was reported that she had made a threat. Durden-Bosley again

started yelling at Shelby.

30.     With Durden-Bosley in handcuffs, the officers tried placing her in the back

of the patrol Explorer. Shepherd repeatedly directed her verbally to get in the vehicle. She

did not comply; instead, she twisted her body, resisting getting into the vehicle. At that

point, Officer Griffin tried to calm her down again. He explained that they were going to

take her down to the precinct to document the charges.

31.     The officers could not get her to calm down or enter the vehicle. She

continued twisting her body. Eventually, Shepherd placed her in the vehicle. He put his

PLAINTIFFS' COMPLAINT - 8

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

hand on the top of her head, tried to control her wrists, and pushed down. He lost control of the handcuffs and she spun, positioning herself so that she was facing him.

32.     She raised her right leg, brought her heel up so that it was facing Officer Shepherd, and kicked him in the jaw, while yelling, "Fucking Bitch." Everything happened very quickly. Immediately, he felt a tremendous amount of sharp, shooting pain in his jaw, felt and heard his jawbone pop, felt numbing, and heard a high pitch ringing in his ears. The kick knocked him off balance and pushed him backwards about a foot

33.     Immediately after kicking him, Durden-Bosley moved towards him again. The video analysis reveals, after kicking Shepherd, she moved towards the vehicle door, where Shepherd was located, started putting her foot down towards the ground, and then brought it up again towards Officer Shepherd. He needed to act to protect himself, stop the assault, and prevent her from getting out of the vehicle.

34.     Shepherd delivered one punch to stop her and used the momentum from the punch to hold her down and gain control of her handcuffs. Durden-Bosley kept kicking and eventually came under control.

35.     Shepherd asked Officer Griffin to take over because he was still working through the effects of the kick and requested that a sergeant come to the scene because he had used force. Eventually, both Shepherd and Durden-Bosley were transported to the hospital for examinations.

36.     People who saw Shepherd that night after the kick described him as being dazed, in a lot of pain, unable to focus, and saw swelling on his jaw. Clearly, the kick to his face had been significant.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

37.     A couple of days later, Shepherd was placed on administrative leave pending an investigation into his use of force. This occurred on the day that Chief O'Toole was sworn in as the Chief of Police. Chief O'Toole asked the head of the Washington State Patrol to conduct a criminal investigation into Officer Shepherd's use of force. This criminal investigation led to a prosecutor's decline, stating some level of force was necessary, as Durden-Bosley had resisted arrest and assaulted him. Next, the case went to the Department of Justice to determine whether he willfully violated Durden-Bosley's civil rights, by using excessive force. The FBI investigated what happened, and the Department of Justice determined that there was no violation of the federal civil rights laws.

38.     At this point, the SPD began its administrative investigation into Officer Shepherd's use of force. It was determined that all of his actions were within policy, with the exception of the single-strike he used to stop Durden-Bosley's assault and potential escape.

39.     For the single-strike, Chief O'Toole terminated Officer Shepherd's employment. Pursuant to the collective bargaining agreement, the SPOG appealed the termination for lack of just cause. The Disciplinary Review Board (hereinafter "DRB") heard evidence on June 25, 26, 27, 28, and 29, 2018 in Seattle, Washington.

40.     The DRB found that, in reviewing these facts above, while the use of force was questionable, the penalty of termination was unduly severe. While the DRB usually adhered to the principle of deferring to management's judgment of the appropriate penalty once misconduct had been proven, the penalty of termination was unduly severe in this instance and was inappropriate and disproportional to the offense when considering the

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

totality of the circumstances of this incident which included a review of the fact that Shepherd's training under the new rules of the SPD was inadequate and the fact the use of question of the appropriateness of the use of force involved was a close call either way. Additionally, the DRB found that the SPD did not employ progressive discipline as required under their contract with the Seattle Police Guild.

41.     In more detail, the DRB looked at the following factors as detailed in their ruling:

A)     The following circumstances served to mitigate the seriousness of Shepherd's offense:

    i.     Shepherd had been kicked in the fact by Durden-Bosley with her boots and had felt stinging pain.

    ii.     Another officer had not assisted Shepherd in putting Durden-Bosley in the back of the patrol car even though is was called for in this instance.

    iii.     Shepherd only had seconds to assess the situation and consider his options based on the circumstances detailed above after being kicked in the face by Durden-Bosley and seeing what a reasonable officer could have perceived to be an escape attempt by Durden-Bosley.

    iv.     Shepherd had spent time using de-escalation tactics on Durden-Bosley to no avail.

    v.     Shepherd had only landed one blow, perhaps reflexively, to Durden-Bosley and then stopped.

    vi.     Durden-Bosley stopped resisting at that point and the situation calmed down.

PLAINTIFFS' COMPLAINT - 11

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

vii.   The assessment of reasonable force in this case appeared to be one where reasonable minds could differ as there was testimony from other SPD officers that Shepherd's use of force was reasonable, necessary and appropriate and not a violation of policy.

B)   Training Considerations

i.   It was found by the DRB that Shepherd was trained to respond exactly as he did. The quote from the training officer was that "If someone hits you…You hit them back…" This training was still in effect well after this incident with Shepherd and Durden-Bosley.

ii.   This training office also testified that Shepherd's use of force was appropriate under SPD policy.

iii.   In totality, Shepherd used force that he not only believed was warranted based on his training but, the use of force was required under SPD policy and training.

C)   There were no prior or subsequent disciplinary actions exactly comparable to Shepherd's by the SPD or the City of Seattle. While discipline has been handed down at times for public incidents, no one has been discharged or terminated for similar actions – even those that became public.

D)   The DRB looked to Shepherd's prior discipline and found the following:

i.   The SPD had placed great weight on a prior 10-day suspension for an incident not involving use of force at all. The suspension was for a difficult call made by Shepherd, with his supervisor's input, where he released an arrestee in a domestic disturbance incident involving

PLAINTIFFS' COMPLAINT - 12

roommates who then went back to the home and murdered his roommate. The DRB found this to be an entirely different matter. They did not say that it would be something that could never be considered when looking at progressive discipline but that, even if it was considered as a prior discipline for that purpose, the next step in progressive discipline would not require discharge or termination.

    ii.    Shepherd had never been disciplined for anything other than that one ten day suspension until this discharge and termination.

    iii.    The SPD seemed to be even more upset that Shepherd would not admit he violated City Policy. The DRB reasoned that there was no reason for him to acknowledge a violation he did not believe he committed. This was especially true when the training officer and others testified he had not violated policy.

E)    Shepherd had a good record of employment with the City as detailed in testimony and his official record.

F)    Political motivations appeared to be at play here. The DRB noted that perhaps Shepherd's termination was meant to be a message to the public, the Court Monitor and DOJ and SPD officers that it was taking its use of force policies seriously. However, since that time, there have been several high-profile use of force incidents that have gone unpunished or only resulted in short suspensions. Shepherd believes those were likely warranted and was definitely warranted in his case as well.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

42.     The DRB concluded that the penalty of discharge was excessive in Shepherd's case after taking into account the various mitigating considerations and other factors. The DRB felt an significant suspension was more appropriate even though determining the length would be challenging. In the end, the DRB concluded that a 15-day suspension was appropriate.

43.     The issue should have ended there but, the SPD and the City of Seattle, for reasons only they know, persisted to appeal the ruling of the DRB in order to terminate Shepherd.

44.     In appealing, Shepherd was denied the ability to bring forth evidence which would have again confirmed that, at minimum, his discharge and termination were not warranted.

45.     Shepherd brings this case to shed light on his wrongful termination and to prove that he has been damaged as a result of the Defendants' vendetta against him and his unfair and unequal treatment by Defendants along with their egregious breach of the contracts they have with the Seattle Police Guild of which Shepherd was a member at the time of their wrongful actions against him.  As a member of the Seattle Police Guild, Shepherd brings claims for breaches of the Contracts the Seattle Police Guild has with the City of Seattle that have directly violated his rights and protections under those contracts.

**FIRST CAUSE OF ACTION**
**Negligence**

46.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-45 above.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

47.     The Defendant owed a duty to the Plaintiff to follow the agreements they had with the Seattle Police Guild and their employees and to not allow its representatives by

    a.  Improperly training Shepherd;

    b.  Improperly pursuing a vendetta against Shepherd for some unknown reason in order to discharge and terminate him in violation of their own rules and procedures;

    c.  Failing to follow their own precedent established both before and after Shepherd's incident for handling a violent arrestee who assaults an officer; and

    d.  Improperly refuse to follow the ruling/findings of the DRB and continue to pursue Shepherd's discharge and termination when Defendants never pursued or pursue that level of discipline against other officers in similar and public incidents like the one involving Shepherd;

48.     The Defendant, its agents, contractors and/or employees breached its duty of care when they acted or failed to act as detailed above. Those incidents are not all-inclusive but just a summary of some of the failed actions/inactions of Defendants in this matter.

49.     The Plaintiff was damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees in an amount to be proven at trial.

//

PLAINTIFFS' COMPLAINT - 15

**SECOND CAUSE OF ACTION**
**Negligence – Failure to Supervise (Seattle Police Department)**

50.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-49 above.

51.     Seattle Police Department had a duty to supervise its employees to ensure they properly conducted required training in an expeditious manner, did not carry out vendettas against fellow employees and properly trained officers on what use of force they allowed under all circumstances.

52.     Further, SPD had a duty to ensure discipline was meted out fairly and evenly at all times and was not excessive in any particular circumstances in relation to other similar circumstances.

53.     SPD breached its said duty by failing to supervise the employees who trained Shepherd and other officers that they would not allow the use of force they encouraged Shepherd to use in this instance. Shepherd was trained to use this level of force and then subsequently discharged and terminated when he did so.

54.     SPD also routinely handed out and still hands out short suspensions for similar and equally public uses of force instead of termination. In those cases, the City of Seattle has never stepped in to pursue discharge and termination of an officer as they did with Shepherd.

55.     The Plaintiff was damaged as a direct and proximate result of the actions of the Defendant, its agents, contractors and/or employees in an amount to be proven at trial.

*//*

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

56.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-55 above.

57.     When Plaintiff joined the SPD, he was a party to the contract between the Seattle Police Guild and the City of Seattle.

58.     Defendants breached their duty to Plaintiff by pursuing his discharge and termination without considering the standards under the law of giving deference to officers under duress due to the limited time (in this case no more than 2 seconds) the officers have to make critical decisions involving their safety and the safety of the public when confronted by a violent and out of control person or persons.

59.     In the only proceeding where all the facts were considered, including the training involved for Shepherd, the immense public pressure on the political figures pursuing Shepherd's discharge and termination, and the disproportional punishment meted out to Shepherd in relation to other similar and public incidents where only suspensions had been and are still levied, Shepherd was properly proven to be right in that the punishment was overly severe, even if one came to the difficult conclusion that he used too much force.

60.     Any reasonable party in Defendant's shoes would have ensured the punishment, if even meted out, was the same or similar as those officers in a similar predicament.

PLAINTIFFS' COMPLAINT - 17

61.     In failing to do so, as would a reasonable party in Defendant's shoes, Defendant breached its contract with Plaintiff as a Third-Party Beneficiary of the contract between the City of Seattle and the Seattle Police Guild.

62.     Instead, Defendant made the problem worse by creating a situation where Shepherd is now unemployed and stained with the general idea he did something to warrant discharge and termination even where he followed his training as testified to in the DRB hearing by the training officer.

63.     Plaintiff brings this claim for the compensatory damages, attorney's fees, costs, and other damages that Plaintiff experienced as a direct and proximate result of Defendants' breach of contract. These damages and attorney's fees and costs are in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

64.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-63 above.

65.     At all material times, the contract between the City of Seattle and the Seattle Police Guild, of which Shepherd was a party to by way of his employment with the SPD, contained an implied covenant of good faith and fair dealing.

66.     Defendant breached their implied duty of good faith and fair dealing when Defendant failed to properly perform their duties under the contract with the Seattle Police Guild to a reasonable standard.

67.     Plaintiff brings this claim for the monetary losses, lost interest, attorney fees, costs, and other damages that Plaintiff experienced as a direct and proximate result of

PLAINTIFFS' COMPLAINT - 18

the Defendants' breach of its implied duty of good faith and fair dealing.  These damages

and attorney's fees and costs are in amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

68.     Plaintiff re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1-67 above.

69.     The Defendants owed a duty to the Plaintiff to act as a reasonable and

prudent municipality in preventing any action that resulted in his discharge and termination

for actions other officers had been and continue to be only suspended for.

70.     The Defendants, its agents, contractors and/or employees failed to properly

apply their discipline procedures in a fair, equitable, and reasonable manner.

71.     The Defendants' actions were taken with a gross disregard for the Plaintiff's

rights and were so severe and outrageous so as to shock the conscience and cause the

Plaintiff severe emotional distress, embarrassment and ridicule.

72.     The Plaintiff was damaged as a direct and proximate result of the actions of

the Defendants, its agents, contractors and/or employees.  The Plaintiff's emotional distress

includes, but is not limited to, anxiety and a loss of sleep and are in an amount to be proven

at trial.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73.     Plaintiff re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1-72 above.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

74.     The Defendants owed a duty to the Plaintiff to act as a reasonable and prudent municipality in preventing any action that resulted in his discharge and termination for actions other officers had been and continue to be suspended for.

75.     The Defendants' actions were taken with a gross disregard for the Plaintiff's rights and were so severe and outrageous so as to shock the conscience and cause the Plaintiff severe emotional distress, embarrassment and ridicule.

76.     The Plaintiff was damaged as a direct and proximate result of the actions of the Defendants, its agents, contractors and/or employees.  The Plaintiff's emotional distress includes, but is not limited to, anxiety and a loss of sleep and are in an amount to be proven at trial.


**SEVENTH CAUSE OF ACTION**
**§§ 1981 and 2000e et seq. and RCW 49.60 et seq.**

77.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-76 above.

78.     Officer Shepherd is male and African American.

79.     During his employment with defendants City and SPD, Officer Shepherd has been subjected to adverse employment decisions and disparate treatment based on his race.

80.     Officer Shepherd has performed his duties as an SPD Officer well enough to confirm that defendants' conduct was not due to inadequate performance or any other lawful reason. Additionally, other officers who are not African American have been accused of similar questionable use of force incidents and were never terminated either before or since Shepherd's incident.

PLAINTIFFS' COMPLAINT - 20

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

81.     Defendants' conduct constitutes racial discrimination against Officer Shepherd in violation of 42 U.S.C. §§ 1981 and 2000e et seq. and RCW 49.60. et seq.

82.     As a direct, proximate and foreseeable result of defendants' discriminatory and unlawful conduct, Officer Shepherd has suffered injury and damage. By way of example, Officer Shepherd's damages include, but are not limited to, loss of pay and wages, benefits, loss of career advancement and earning capacity, and non-economic injuries. At least a portion of Officer Shepherd's damages are liquidated sums for which defendants owe prejudgment interest. The nature and extent of Officer Shepherd's injuries and damages will be proven at time of trial or other hearing.

## EIGTH CAUSE OF ACTION
**Hostile Work Environment Based on Race in Violation of 42 U.S.C. §§ 1981 and 2000e et seq. and RCW 49.60. et seq**

83.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-82 above.

84.     During his employment with defendants, Officer Shepherd has been subjected to improper disciplinary and punitive measures imposed by the defendants. Defendants' unlawful conduct was based on his race and in retaliation against him, because of his lawful efforts to remedy defendants' improper disciplinary and punitive conduct toward him.

85.     Defendants' conduct has created a hostile work environment.

86.     Defendants' conduct constitutes a hostile work environment in violation of 42 U.S.C. §§ 1981 and 2000e et seq. and RCW 49.60.et seq.

Creed & Elliott, LLP
11120 NE 2nd St, Ste 100
Bellevue, WA 98004
P: 800-679-4202
F: 206-299-9886

87.     As a direct, proximate and foreseeable result of defendants' discriminatory and unlawful conduct, Officer Shepherd has suffered injury and damage. By way of example, Officer Shepherd's damages include, but are not limited to, loss of pay and wages, benefits, loss of career advancement and earning capacity, and non-economic injuries. At least a portion of Officer Shepherd's damages are liquidated sums for which defendants owe prejudgment interest. The nature and extent of Officer Shepherd's injuries and damages will be proven at time of trial or other hearing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.     That the Court assume jurisdiction in this matter over Plaintiffs' claim;

2.     That the Court award Plaintiff damages against Defendant in an amount to be determined at trial;

3.     That the Court award Plaintiffs the costs, disbursements, and attorney's fees incurred in pursuing this action; and

4.     That the Court awards such other relief as it may deem just and equitable.

DATED: January 7, 2022                    LAW OFFICES OF JOSEPH W. CREED


By:     /s/ Lisa R. Elliott
        Lisa R. Elliott, WSBA #41803
        Joseph W. Creed WSBA #42451
        Attorneys for Plaintiff

PLAINTIFFS' COMPLAINT - 22                    Creed & Elliott, LLP
                                              11120 NE 2nd St, Ste 100
                                              Bellevue, WA 98004
                                              P: 800-679-4202
                                              F: 206-299-9886